UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:09-CV-317-KKC
(Consolidated with 5:10-CV-00072-KKC)

CRESTWOOD FARM BLOODSTOCK, LLC                                              PLAINTIFFS

v.                      **MEMORANDUM OPINION AND ORDER**

EVEREST STABLES, INC., and JEFFREY
L. NIELSEN                                                                  DEFENDANTS

* * * * * * * * * * * * * *

This matter is before the Court on the motion for preliminary injunction filed by Everest Stables, Inc. ("Everest"). Rec. 31. Everest seeks a preliminary injunction pursuant to Federal Rule of Civil Procedure 65, ordering Defendants, Lewis Pope McLean, Sr., Crestwood Farm Bloodstock, LLC, McLean Holdings, LLC and Crestwood Farm, LLC (hereinafter "Crestwood") to turn over $219,513.89, representing proceeds from the sale of thoroughbred horses that Everest contends Crestwood has wrongfully withheld. The Court has reviewed the parties' briefs and conducted a hearing at which both parties presented evidence and made arguments on the motion for injunctive relief. As a result, this matter is now ripe for decision. For the reasons set forth below, the Court will deny Everest's motion for a preliminary injunction.

I.      **FACTUAL BACKGROUND**

Crestwood owns and operates Crestwood Farm in Fayette County, Kentucky, which is equipped to breed, board and care for thoroughbred horses. Everest is a thoroughbred horse breeding and racing operation based in Minnesota. Crestwood and Everest began a business relationship in 1993 when Everest moved a number of its thoroughbred horses to Crestwood

Farm for boarding. At some point before November 2008, Everest decided to sell many, if not all of the horses boarded at Crestwood.

In November 2008, the parties entered into a Purchase and Sale Agreement ("the Agreement"). Under the terms of the Agreement, Crestwood agreed to board and manage the sale and disposition of more than 100 Subject Horses. The Agreement contemplated that Everest would transfer title and ownership to all but two of the Subject Horses to Crestwood to facilitate their ultimate sale. Rec. 31, Attach. 4, Agreement at ¶ 1. The parties expressly agreed that Everest would retain title and ownership of Island Fashion and the 2008 Storm Cat/Island Fashion filly (the "Island Fashion filly") until they were sold. *Id.* The Agreement also provided that Crestwood was responsible for all boarding costs and other fees associated with the Subject Horses until their sale.

While operating under the Agreement, Crestwood sold several groups of Subject Horses at the January 2009, September 2009, November 2009 and January 2010 Keeneland Sales.[1] For purposes of resolving the pending motion, the most relevant facts pertain to Crestwood's efforts to sell the Island Fashion filly, one of the horses that Everest continued to own under the Agreement, at the September 2009 Keeneland Sale. During the sale, two bids were placed for the Island Fashion filly, believed to have been for $850,000 and $875,000 respectively.[2]

---

[1] Everest has submitted a record from these sales showing Everest's share of the net sales proceeds of the September 2009, November 2009 and January 2010 Keeneland sales. Rec. 31, Attach 9, Crestwood Records. According to this record, Everest's share of the net sales proceeds from the September 2009 sales was $170,131.67, its share from the November 2009 sales was $43,172.50 and its share from the January 2010 sales was $38,350.00. *Id*. The record also indicates that Crestwood took an offset against these net sales proceeds for the Island Fashion filly in the amount of $219,513.89. *Id*.

[2] At the hearing held on Everest's motion, Crestwood indicated that there is a videotape showing these underbids being made. At this time, the Court finds it unnecessary to review this videotape because there is no dispute that underbids were made for the Island Fashion filly. The primary question that must be answered at this time in resolving Everest's motion for a preliminary injunction is whether Everest was permitted to set a reserve

2

However, Everest had submitted documents to Keeneland setting a reserve price of $900,000 on the Island Fashion filly. Accordingly, the filly was not sold and Keeneland published the transaction as reserve not attained ("RNA") $900,000. Rec. 31, Attach. 11, Keeneland Sales Summary.

Crestwood maintains that the Agreement does not permit Everest to set reserves as to any of the Subject Horses. As a result, Crestwood claims that Everest's actions wrongfully deprived Crestwood of its twenty-five percent share of the Island Fashion filly's net sales proceeds. After Everest refused to pay this amount, "Crestwood purchased certificates of deposit in the appropriate sum using proceeds from the sale of other Subject Horses." Rec. 35, Crestwood Response at 13. Everest now seeks injunctive relief to recover $219,513.89, which it claims has been wrongfully withheld by Crestwood.

## II. DISCUSSION

### A. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy, which should only be granted if the moving party carries its burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). This Court's decision on whether to issue the injunction requires balancing four factors: (1) the likelihood that Everest will succeed on the merits; (2) whether Everest will suffer irreparable harm if the injunction does not issue; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the injunction advances the public interest. *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009). These four considerations are "factors to be balanced, not

---

price for the Island Fashion filly.

prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003).

B. ANALYSIS

1. Likelihood of Success on the Merits

The Court must determine whether Everest was permitted to set and enact a reserve price regarding the auction of the Island Fashion filly under the terms of the Agreement. Upon reviewing the Agreement, the other evidence in the record and considering the parties' arguments, the Court finds that Everest has shown a likelihood of success on the merits that it retained the right to set reserves with respect to the two horses that it continued to own under the Agreement, including the Island Fashion filly.

As the Court recognized at the hearing on Everest's motion, the Agreement treats Island Fashion and the Island Fashion filly differently from other Subject Horses. For example, unlike other Subject Horses, the Agreement unambiguously provides that Everest retained title and ownership to the Island Fashion filly until its sale. Rec. 31, Attach. 4, Agreement ¶ 1. In addition, Everest was also entitled to a greater share of the Island Fashion filly's net sale proceeds than other Subject Horses listed with it in Exhibit 5 to the Agreement. *Id.* at ¶ 8(A).

While Crestwood may have intended to prevent the setting of reserves as to any or all of the Subject Horses under the Agreement, one party's intent or understanding is insufficient to construe a contract at variance with its plain and unambiguous terms. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002). Regardless of Crestwood's understanding, the Agreement provides that "[f]or all horses to be sold at public auction, *Crestwood agrees and covenants* that each horse shall be sold with no reserve, RNA, or buyback price." Rec. 31, Attach 4, Agreement at ¶ 7 (emphasis added). However, nothing in the

4

Agreement similarly limits Everest's ability to set reserves on the two horses to which it retained title.

The finding that Everest had the right to set reserves on the Island Fashion filly and thereby render the auction a non-sale also appears consistent with Kentucky statutory law and the Keeneland Public Auction Sales Code of Conduct, which permit setting reserves and allow sellers to RNA their property. As the owner and holder of legal title to the Island Fashion filly, Everest had the legal right to set a reserve price. The Court has found nothing in the Agreement indicating that Everest gave up that right.

For the foregoing reasons, and the reasons stated by the Court on the record during the hearing on Everest's motion, the Court finds that Everest has made a strong showing with respect to the likelihood of success on the merits.

**2. Remaining Factors for Injunctive Relief**

The question remains whether injunctive relief is appropriate in this case in terms of the other factors the Court must consider. Everest is required to show that it will suffer irreparable harm if an injunction does not issue and an injury is only irreparable if "it is not fully compensable by monetary damages." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007).

Everest has acknowledged that ordinarily preliminary injunctive relief is not warranted where the harm to the moving party is purely financial. *See Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995)("As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm"). Everest relies on an exception to this rule, which finds economic harm

irreparable if it is likely to cause the destruction of the moving party's business or lead to its financial ruin. *Warren v. City of Athens*, 411 F.3d 697, 711-12 (6th Cir. 2005)(explaining that where the conduct sought to be enjoined would likely cause the moving part to go out of business "such financial ruin qualifies as irreparable harm"); *Performance Unlimited v. Questar Publishers*, 52 F.3d at 1382.

In support of its argument for irreparable harm, Everest has submitted an Affidavit from Mr. Nielsen, its owner, indicating that Everest needs the net sales proceeds being withheld by Crestwood to fund its ongoing thoroughbred operations. Rec. 31, Attach. 2, Nielsen Aff. at ¶ 23. Mr. Nielsen claims that these funds are critical because Everest is currently operating at a deficit because Everest's expenses exceed "the revenue generated from its racing and sales activities." *Id.* Both parties have acknowledged the impact that changing economic conditions have had on the thoroughbred industry. Furthermore, it is clear that Everest sought to reduce his inventory of horses. Conceivably, this was done to reduce operating costs and increase cash flow.

However, even utilizing a sliding-scale approach, and considering that Everest has made a strong showing on the likelihood of success factor, the Court finds that an insufficient showing of irreparable harm has been made. *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 657 (6th Cir. 1996). The only evidence submitted by Everest is Mr. Nielsen's affidavit. However, the affidavit does not support a finding that Everest faces an imminent danger of economic collapse or is likely to become insolvent in the near future if an injunction does not issue. The Court has been presented with no financial information or records indicating the status of Everest's current financial situation. As a result, the Court finds that Everest has not demonstrated that it is likely suffer irreparable harm if the injunction does not issue.

The Court has also considered the remaining factors - substantial harm to others and the public interest - and finds that they do not weigh strongly for or against injunctive relief. However, because it appears that any injury to Everest is reparable by monetary damages, the Court finds that injunctive relief is not appropriate.

Although injunctive relief in this case may not be in order, a prompt disposition of the matter is critical. Therefore, the Court will direct the parties to participate in limited and expedited discovery and to operate on an efficient and concentrated schedule. Toward that end, the Court will conduct a telephonic Rule 26 conference as set forth below.

### III. CONCLUSION

For the reasons set forth above and having considered the relevant factors, the evidence presented, and the arguments advanced by counsel, the Court finds that on balance, the entry of a preliminary injunction is not appropriate in this matter.

Accordingly, **IT IS HEREBY ORDERED** that:

(1)  Everest's motion for preliminary injunctive relief (Rec. 31) is **DENIED.**

(2)  The parties are directed to participate in a telephonic scheduling conference on **August 3, 2010 at 12:45 p.m.** to revise the existing Scheduling Order.

This the 24th day of June, 2010.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge